UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

REGINALD LAMAR BROWN,

Petitioner,

v. Case No.: 3:23-cv-1093-MMH-PDB
3:18-cr-89-MMH-LLL

UNITED STATES OF AMERICA,

Respondent.

---

# ORDER

Petitioner Reginald Lamar Brown moves to vacate his convictions and sentences under 28 U.S.C. § 2255. (Civ. Doc. 1).[1] A jury found Reginald Brown and Katrina Brown guilty of conspiracy to commit mail fraud and wire fraud, aiding and abetting mail fraud, aiding and abetting wire fraud, aiding and abetting money laundering, and other crimes. (Crim. Docs. 280 and 281). Reginald Brown raises sixteen grounds of ineffective assistance of trial counsel and one ground of ineffective assistance of appellate counsel. The United

[1] "Civ. Doc #" refers to a docket entry in the § 2255 case, No. 3:23-cv-1093-MMH-PDB. "Crim. Doc. #" refers to a docket entry in the criminal case, No. 3:18-cr-89-MMH-LLL. For all pleadings and documents filed in each case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

States responded in opposition (Civ. Doc. 9), and Reginald Brown replied. (Civ. Doc. 10). Thus, the case is ripe for a decision.

Under 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that a hearing is unnecessary to resolve the Motion. No evidentiary hearing is required because Reginald Brown's allegations are affirmatively contradicted by the record or, even if the facts he alleges are true, he still would not be entitled to relief. Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015); see also Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3]

## I. Motion to Supplement and for Leave to Amend

Two years after the parties completed briefing, Reginald Brown filed a motion titled "Motion to Supplement Pending § 2255 Motion with Newly Discovered Brady Evidence and Request for Evidentiary Hearing." (Civ. Doc.

---

[2] Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

[3] The Court does not rely on unpublished opinions as binding precedent, but they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

19). The United States opposed the motion (Civ. Doc. 20), and Reginald Brown replied. (Civ. Doc. 21).

In the motion, Reginald Brown moves to supplement the record with a letter that he allegedly recently discovered. (Civ. Doc. 19 at 1–3). On June 12, 2015, Jane G. Bouda, a contract compliance manager, sent the letter to BizCapital. (Civ. Doc. 19-1 at 3). In Ground Seven and Ground Seventeen, Reginald Brown asserts that trial counsel deficiently performed at trial by not cross-examining Bouda with the letter. (Civ. Doc. 1 at 17, 37). Because the letter is relevant to Ground Seven and Ground Seventeen, Brown's motion (Civ. Doc. 19) to supplement the record is due to be **GRANTED**. Rule 7(a), Rules Governing Section 2255 Proceedings. The Court will direct the Clerk to docket the letter (Civ. Doc. 19-1 at 3) as a supplement to Reginald Brown's § 2255 motion.

In the motion, Reginald Brown also moves for leave to supplement his § 2255 motion with new grounds. (Civ. Doc. 19 at 3–9). For the first time, he asserts (1) that the prosecutor violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose the June 12, 2015 letter, (2) that the prosecutor failed to prove that the City of Jacksonville was a victim under the Mandatory Victims Restitution Act, (3) that trial counsel deficiently performed by not introducing the June 12, 2015 letter into evidence to challenge the prosecutor's restitution calculation, (4) that the prosecutor failed to prove actual loss under the MVRA,

and (5) that the prosecutor violated his federal right to due process by calculating restitution with false evidence. (Civ. Doc. 19 at 3–13).

"After the time to file an amendment as a matter of course expires, Federal Rule of Civil Procedure 15 allows a plaintiff to amend his complaint only with the opposing party's written consent or leave of court." Wade v. Daniels, 36 F.4th 1318, 1328 (11th Cir. 2022). See Rule 12, Rules Governing Section 2255 Proceedings. "Leave to amend should be freely given, but a district court can deny leave to amend [ ] when amendment would be futile." Wade, 36 F.4th at 1328. And leave to amend is futile if the pleading "as amended is still subject to dismissal." Wade, 36 F.4th at 1328 (quoting Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1263 (11th Cir. 2004)).

A one-year statute of limitations applies to a § 2255 motion. 28 U.S.C. § 2255(f). The limitation period starts to run "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Here, the United States Supreme Court denied Reginald Brown's petition for a writ of certiorari on October 3, 2022. (Crim. Doc. 554). The limitation period started the next day, October 4, 2022, and expired a year later, October 4, 2023. Clay v. United States, 537 U.S. 522, 527 (2003). Reginald Brown filed his § 2255 motion on September 27, 2023. (Doc. 1 at 12). Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001). Unless the new grounds in the motion to supplement relate back to the timely filed grounds in the § 2255 motion, the

new grounds are time-barred. Mayle v. Felix, 545 U.S. 644, 650 (2005). Notably, an amended motion does not relate back to a timely motion when the amended motion "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle, 545 U.S. at 650. However, if the amended motion and the timely motion state "claims that are tied to a common core of operative facts, relation back will be in order." Mayle, 545 U.S. at 664.

In the motion to supplement, Reginald Brown asserts (1) that the prosecutor violated Brady by failing to disclose the June 12, 2015 letter, (2) that the prosecutor failed to prove that the City of Jacksonville was a victim under the MVRA, (3) that trial counsel deficiently performed by not introducing the June 12, 2015 letter into evidence to challenge the calculation of restitution, (4) that the prosecutor failed to prove actual loss under the MVRA, and (5) that the prosecutor violated his federal right to due process by calculating restitution with false evidence. (Civ. Doc. 19 at 3–13). In the timely filed § 2255 motion Reginald Brown asserted that trial counsel deficiently performed by not challenging the calculation of the amount of loss (Doc. 1 at 13, 17, 37), and the calculation of forfeiture (Doc. 1 at 15), but the calculation of the amount of loss and forfeiture is different than the calculation of restitution and actual loss under the MVRA. Also, even though Reginald Brown asserted in the timely § 2255 motion that trial counsel deficiently

performed by not cross-examining Bouda with the June 12, 2015 letter, a Brady claim based on the prosecutor's failure to disclose the letter before trial is not based on the same operative facts as a Strickland claim based on counsel's conduct during trial. Mayle, 545 U.S. at 662 ("If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance."). Because the new grounds in the motion to supplement do not relate back to the grounds in the timely § 2255 motion, the new grounds are untimely.

Under § 2255(f)(4), the limitation starts "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." At the sentencing hearing for both Reginald Brown and Katrina Brown, Katrina Brown introduced the June 12, 2015 letter into evidence. (Crim. Docs. 442-22 and 492 at 4, 138). Because Reginald Brown could have discovered the June 12, 2015 letter with reasonable diligence at the sentencing hearing, the letter is not "newly discovered," and § 2255(f)(4) does not apply. Trucchio v. United States, 553 F. App'x 862, 863 (11th Cir. 2014) ("[T]he 'due diligence' element of § 2255(f)(4) requires neither the 'maximum feasible diligence' nor the undertaking of repeated exercises in futility, but it does require that a prisoner make 'reasonable efforts' in discovering the factual predicate of his claim." (citation omitted)).

Even if the new grounds are timely, the new grounds are without merit. On the third day of trial and outside the presence of the jury, Katrina Brown advised the trial judge that the prosecutor had failed to disclose the June 12, 2015 letter. (Crim. Doc. 335 at 21–24). And at the sentencing hearing, Katrina Brown introduced the letter into evidence. (Crim. Docs. 442-22 and 492 at 138). Even if the prosecutor failed to disclose the June 12, 2015 letter before trial, Reginald Brown learned about the suppression of the letter during trial and could have raised a Brady claim on direct appeal. Likewise, Reginald Brown could have argued on direct appeal that the prosecutor failed to prove that the City of Jacksonville was a victim and failed to prove actual loss under the MVRA, and that the prosecutor violated his federal right to due process by calculating restitution with false evidence. Consequently, these trial error claims are procedurally defaulted. McKay v. United States, 657 F.3d 1190, 1196 (11th Cir. 2011); Cani v. United States, 331 F.3d 1210, 1213–14 (11th Cir. 2003).

Also, the new claims identified in the motion to supplement are based on either trial counsel's failure to challenge the calculation of restitution or the prosecutor's failure to prove restitution with competent evidence. (Civ. Doc. 19 at 3–13). Indeed, Reginald Brown contends that the Brady violation in part deprived him an opportunity to challenge restitution. (Civ. Doc. 19 at 5). But a defendant cannot assert a claim that challenges restitution in a § 2255 motion

because § 2255 authorizes relief only for a defendant who is in custody and claims a right to release. Mamone v. United States, 559 F.3d 1209, 1211 (11th Cir. 2009) ("Despite the presence of claims challenging his custody and requesting release from custody, the restitution claim did not seek release from custody and was rightly denied by the district court."). This bar on a restitution claim in a § 2255 motion extends to a claim of deficient performance for a failure to challenge restitution. Blaik v. United States, 161 F.3d 1341, 1343 (11th Cir. 1998). Consequently, the new claims in the motion to amend are untimely, procedurally barred, and without merit. Because an amendment to the § 2255 motion with the new claims is futile, Reginald Brown's motion (Civ. Doc. 19) to amend is due to be **DENIED**. Hall, 367 F.3d at 1262–63.

## II. Background

A federal grand jury returned a thirty-eight-count Indictment (Crim. Doc. 1) against Reginald Brown and Katrina Brown. The grand jury charged (1) conspiracy to commit mail and wire fraud against both Reginald Brown and Katrina Brown (Count One), (2) twenty-six counts of aiding and abetting mail and wire fraud against both Reginald Brown and Katrina Brown (Count Two to Count Twenty-Seven), (3) six counts of aiding and abetting money laundering against both Reginald Brown and Katrina Brown (Count Twenty-Eight to County Thirty-Three), (4) two counts of attempted bank fraud only against Katrina Brown (Count Thirty-Four and Count Thirty-Five), (5)

two counts of making a false statement to a federally insured institution only against Katrina Brown (Count Thirty-Six and Count Thirty-Seven), and (6) one count of failing to file a tax return only against Reginald Brown. (Count Thirty-Eight) (Crim. Doc. 1 at 1–58).

The evidence at trial[4] proved that Katrina Brown's parents owned a company called KJB Specialties, which managed a barbecue restaurant in Jacksonville, Florida. (Crim. Doc. 334 at 42). KJB Specialties obtained a loan and a grant from the City of Jacksonville to start a new business producing and selling barbecue sauce. (Crim. Doc. 334 at 42–44). Katrina Brown and her mother formed a company called Basic Products to manage the production of the barbecue sauce and another company called Cowealth to manage a warehouse for the production of the sauce. (Crim. Docs. 276-13 at 7–10 and 334 at 42, 72–74). Katrina Brown and her mother opened a bank account for Basic Products. (Crim. Docs. 276-13 and 339 at 191–92).

An ordinance from the City of Jacksonville authorized a $380,000.00 loan for the barbecue sauce business, and a $260,000.00 grant. (Crim. Docs. 276-1, 334 at 50, and 339 at 203). Reginald Brown, a city councilman, voted on the ordinance that authorized both the loan and the grant. (Crim. Docs. 276-1 and 334 at 51). KJB Specialties assigned the City's loan to Basic Products and

[4] At trial, Katrina Brown represented herself. (Crim. Doc. 334 at 6).

Cowealth (Crim. Docs. 276-8 at 49–58 and 334 at 55–56, 64–65), and both Basic Products and Cowealth obtained a Small Business Administration loan from BizCapital in the amount of $2,650,000.00 to cover the remaining costs of starting the business. (Crim. Docs. 276-3, 276-4, 276-5, 334 at 43–44, 52–53, 57, 186–87, and 339 at 24, 27, 205). The agreement for the City's loan required Basic Products and Cowealth to use the funds from the City's loan for the purchase and improvement of the land where the warehouse was located. (Crim. Docs. 276-8 at 12–13 and 339 at 220–21). The agreement for the City's grant required Basic Products and Cowealth to first use funds from the SBA loan for other expenses before using funds from the grant. (Crim. Docs. 276-8 at 11, 334 at 64–65, 115–16, and 339 at 224–25). The Small Business Administration guaranteed seventy-five percent of the SBA loan. (Crim. Docs. 276-2 at 1 and 334 at 43, 155).

To obtain funds from the SBA loan, BizCapital required Basic Products and Cowealth to submit a draw request with an invoice from a vendor. (Crim. Docs. 276-2 at 5, 334 at 43–44, 46–47, and 339 at 25). After approving a draw request, an employee at BizCapital sent a check to the vendor to pay the invoice. (Crim. Docs. 334 at 44 and 339 at 25). Also, BizCapital allowed Basic Products and Cowealth to request reimbursement for the payment of an invoice. (Crim. Doc. 334 at 103–04). Katrina Brown submitted to BizCapital draw requests for fraudulent invoices. (Crim. Doc. 334 at 47).

For example, in October of 2013, Katrina Brown submitted a draw request for an invoice from VC Gantt, LLC, for office furniture. (Crim. Docs. 276-24 at 1, 10–11 and 334 at 95–99). But VC Gantt did not sell Basic Products or Cowealth office furniture. (Crim. Doc. 335 at 59–62). Nevertheless, BizCapital sent VC Gantt a check for $6,083.00 for the fraudulent invoice, and the owner of VC Gantt deposited the check, withdrew the funds, provided Katrina Brown $5,583.00, and kept $500.00 for himself. (Crim. Docs. 276-24 at 10, 276-25, 334 at 98–100, 335 at 64–68, and 339 at 36–37, 41–42). In December of 2013, Katrina Brown submitted a draw request for reimbursement of another invoice from VC Gantt for more office furniture. (Crim. Docs. 276-27 at 35–36, 334 at 100, 108, and 339 at 45–47). Again, VC Gantt did not sell Basic Products or Cowealth any furniture, yet the owner of VC Gantt cashed a check from Katrina Brown for furniture and gave the funds to Katrina Brown. (Crim. Docs. 276-31, 334 at 98–99, 100, and 335 at 69–71). The owner of VC Gantt denied preparing the invoices but testified that he and Katrina Brown discussed creating invoices for furniture already used at the warehouse. (Crim. Doc. 335 at 61–64).

In December of 2013, Katrina Brown also submitted a draw request for three invoices from Tommie Hogan for work as a contractor. (Crim. Docs. 276-26 at 1, 19–24, 334 at 104, and 339 at 45). The invoices charged three months of work at a rate of $500.00 a week, and Katrina Brown attached three

checks from an account belonging to Basic Products issued to Hogan for the work. (Crim. Docs. 276-26 at 19–24, 334 at 104–08, and 339 at 46–47). Hogan denied either working for Basic Products or creating the invoices and testified that Katrina Brown asked him to cash the checks and that she kept $5,000.00 and gave him $1,000.00. (Crim. Docs. 335 at 110–18).

Katrina Brown also submitted draw requests for fraudulent invoices from A Plus Training Consultants and RB Packaging. Katrina Brown and Reginald Brown formed these two companies, and Reginald Brown opened a bank account for each company designating himself as the only person authorized to access the accounts. (Crim. Docs. 276-9, 276-10, 276-11, 276-12, and 334 at 42, 66–72). Between December of 2013, and December of 2014, Katrina Brown submitted ten draw requests for a total payment of $251,918.44 for fraudulent invoices from A Plus Training and two draw requests for a total payment of $12,500.00 for fraudulent invoices from RB Packaging. (Crim. Docs. 276-19, 276-159, 334 at 47, 78–79, 100–03, 109–11, and 339 at 57–71). For example, Katrina Brown submitted an invoice from RB Packaging for the design of a label for the barbecue sauce; but another company designed the label. (Crim. Docs. 276-33 at 1, 12–14, 334 at 110–11, and 335 at 141–46). Katrina Brown also submitted an invoice from RB Packaging for custom corrugated boxes. (Crim. Docs. 276-60 at 3–4 and 336 at 38–39). The description of the boxes and other items in the invoice submitted by Katrina

Brown was almost identical to the description of boxes and other items in an invoice from another business for an earlier purchase of custom corrugated boxes. (Crim. Doc. 336 at 40). A sales representative for the other business testified that he had never heard of RB Packaging as a competitor in the custom corrugated box industry. (Crim. Doc. 336 at 39).

Katrina Brown submitted another invoice from RB Packaging for cooking equipment; however, RB Packaging's bank account did not reflect any purchase of cooking equipment. (Crim. Docs. 276-64 at 7–16 and 335 at 158–64). And again, the description of the cooking equipment in the invoice submitted by Katrina Brown was almost identical to a description of equipment in estimates that Katrina Brown obtained from other businesses. (Crim. Doc. 335 at 158–64, 174–77). Notably, law enforcement searched the warehouse and found no cooking equipment that matched the equipment identified in the invoice. (Crim. Docs. 334 at 47–48 and 335 at 285–89).

Also, Katrina Brown submitted an invoice from A Plus Training for employee orientation and onboarding and for the development of plans for obtaining FDA and other food permits. (Crim. Docs. 276-26 at 1, 14 and 334 at 101). Statements from the bank account belonging to A Plus Training did not reveal any expenditures related to these services. (Crim. Docs. 334 at 103 and 336 at 65–66). And a state agency inspector who assisted Katrina Brown in

applying for food permits denied ever working with either A Plus Training or Reginald Brown. (Crim. Doc. 335 at 180–84).

On October 17, 2024, an employee from BizCapital sent an employee at the City of Jacksonville all the invoices that Katrina Brown had submitted, including the fraudulent invoices, and documents showing all the disbursements from the SBA loan. (Crim. Doc. 339 at 102–05, 226–27). After receiving the records, the City of Jacksonville wired $210,549.99 from the grant to an account belonging to Cowealth. (Crim. Docs. 335 at 268 and 339 at 105–06, 230–32). Then, on December 18, 2014, after funds from the City of Jacksonville had been deposited into the account belonging to Cowealth, Katrina Brown submitted another fraudulent invoice from RB Packaging for $63,216.35 for kitchen equipment, and BizCapital paid the invoice. (Crim. Docs. 276-42 at 1–5, 335 at 220–21, 269, and 339 at 106–08).

BizCapital mailed the checks to pay the invoices from A Plus Training to an address where Reginald Brown's mother lived and the checks to pay for the invoices from RB Packaging to the address where Reginald Brown lived. (Crim. Docs. 276-46 and 334 at 110, 113, 116–18). After depositing the checks, Reginald Brown either withdrew the money as cash or transferred the money to Basic Products by writing a check. (Crim. Docs. 334 at 79–81, 83–85 and 335 at 230–33, 235–37, 239–51, 252–73, 281). Also, Reginald Brown used some of the money for purchases at retail stores, restaurants, hotels, and a movie

theater. (Crim. Docs. 335 at 251 and 336 at 65, 86–87).[5] After the account belonging to Basic Products received the money, Katrina Brown withdrew some money as cash and used other money for purchases at retail stores and restaurants and to pay rent for a condominium. (Crim. Doc. 336 at 101–04). Statements for accounts belonging to A Plus Training and RB Packaging did not reveal payments for ordinary business expenses, like office space or payroll, or other expenses to vendors for services, items, and equipment. (Crim. Doc. 336 at 65–66, 87–89).

Reginald Brown failed to disclose that he earned any income from RB Packaging or Basic Products on a public disclosure form required for a city official and failed to file a tax return in 2014. (Crim. Docs. 276-108, 276-111, and 340 at 40–54). In January of 2015, Katrina Brown submitted to BizCapital a draw request for $64,071.20 for more cooking equipment, and BizCapital denied the request. (Crim. Docs. 276-44 and 335 at 224–27). That same month, Basic Products defaulted on the SBA loan. (Crim. Docs. 276-43, 334 at 160–61, and 335 at 223–24). With taxpayer money, the Small Business Administration paid BizCapital a guarantee on the defaulted loan. (Crim. Docs. 276-47 and 334 at 195–96). In October of 2015, Katrina Brown submitted to BizCapital a

[5] Reginald Brown legitimately used some money from the RB Packaging account for expenses related to the promotion of the barbecue sauce at several festivals. (Crim. Docs. 276-150, 334 at 152–54, 336 at 85–86, 159–62, and 340 at 101–08).

fraudulent tax return for Basic Products. (Crim. Docs. 276-117, 276-118, 276-119, and 340 at 59–64). In November of 2015, and November of 2016, Katrina Brown applied for two more loans from a different lender and submitted fraudulent bank statements with her applications, and the lender denied the applications. (Crim. Docs. 335 at 289–91, 336 at 172–83, 192–97, 204–10, 216–19, 228–37, and 340 at 18–29, 34–39).

At trial, Reginald Brown did not present a case in chief. (Crim. Doc. 337 at 139–40, 149). But Katrina Brown did. During Katrina Brown's case in chief, an economic development officer with the City of Jacksonville testified that he helped Katrina Brown obtain the loan and the grant from the City and introduced Katrina Brown to BizCapital. (Crim. Doc. 340 at 137–38, 142). He explained that the City offered the loan and the grant to encourage redevelopment in the northwest area of Jacksonville. (Crim. Doc. 340 at 138–39). The economic development officer presented the project for the barbecue sauce business to the City's economic board, several committees, and the City council. (Crim. Doc. 340 at 146–47). Fourteen out of the seventeen members of the City council voted in favor of the ordinance authorizing the loan and the grant. (Crim. Doc. 340 at 147–48). Before presenting the project to the City, Katrina Brown's father made a fifty-gallon batch of sauce and offered samples to the economic development officer for tasting. (Crim. Doc. 340 at 148). The economic development officer helped Katrina Brown's father

and mother pitch the barbecue sauce to the Winn Dixie grocery chain. (Crim. Doc. 340 at 151–52). He testified that about seventy percent of the projects funded by the City's economic board failed and that, even though the barbecue sauce business failed, Katrina Brown and her parents genuinely tried to launch the business. (Crim. Doc. 340 at 150, 152).

Another economic development officer for the City of Jacksonville testified that, in 2015, when Cowealth and Basic Products failed to create fifty-six new jobs, the City asked both companies to return $210,000.00 from the grant provided by the City. (Crim. Doc. 337 at 32). He testified that Katrina Brown asked to renegotiate the terms of the contract. (Crim. Doc. 337 at 32). Before renegotiating the terms, the City of Jacksonville asked Katrina Brown for audited financial statements for both companies. (Crim. Doc. 337 at 33). He testified that Katrina Brown instead provided tax returns for the companies, (Crim. Doc. 337 at 33), and that the City of Jacksonville later amended the guidelines that required an audited financial statement because an audit was costly, (Crim. Doc. 337 at 34).

Katrina Brown's father testified that he made barbecue sauce at the warehouse managed by Cowealth and that at the warehouse he received the delivery of equipment to produce the sauce. (Crim. Doc. 337 at 88). When making the sauce, he prepared all the ingredients, and about four or five other persons helped mix the ingredients. (Crim. Doc. 337 at 90–91, 93). Katrina

Brown gave him cash to purchase the ingredients, and with money in an account that belonged to KJB Specialties he paid the persons who helped mix the ingredients. (Crim. Doc. 337 at 91–94). He purchased ingredients and made the sauce only when a store like Winn Dixie or Sam's Club requested the sauce. (Crim. Doc. 337 at 111–12). But still, he lost money selling the sauce to a store because shipping and marketing were expensive. (Crim. Doc. 337 at 115–16). He purchased a five-hundred-gallon kettle for making large quantities of sauce but never used the kettle because an electrician was unable to install the machine. (Crim. Doc. 337 at 117). For the barbecue sauce business, he used money from his personal checking account to pay the City of Jacksonville, BizCapital, a restaurant supplier, utility and insurance companies, and a tax agency. (Crim. Doc. 337 at 98–103, 105, 110–11). Also, he paid cash to five or six bands that performed at a barbecue sauce festival and supplied ribs and chicken wings for the festival. (Crim. Doc. 337 at 104–05). The warehouse appeared empty during inspections because he planned to use sections of the warehouse for a bakery, for producing other brands of sauce, and for barbecuing and packaging ribs and pulled pork. (Crim. Doc. 337 at 121–22).

A manager who worked for a parent company of Winn Dixie testified that he worked with Katrina Brown to sell the barbecue sauce at the grocery store. (Crim. Doc. 340 at 163–65). Winn Dixie sold the barbecue sauce in over a hundred stores; however, Winn Dixie stopped selling the barbecue sauce

because the barbecue sauce business stopped supplying any new product. (Crim. Doc. 340 at 169–71, 173). Also, Winn Dixie partnered with the barbecue sauce business at two or three local events for marketing. (Crim. Doc. 340 at 167–68).

A graphics designer testified that Katrina Brown hired him to design a label for the barbecue sauce bottle. (Crim. Doc. 337 at 24). The designer created all the messaging on the label, and Katrina Brown wrote a description of the company for the label. (Crim. Doc. 337 at 26). He sent a design of a label to a printing company after Katrina Brown approved the design. (Crim. Doc. 337 at 25). The designer did not know whether RB Packaging printed the labels for the bottles. (Crim. Doc. 337 at 28).

The jury found Reginald Brown guilty on all Counts except Count Thirteen, a count for aiding and abetting mail fraud. (Crim. Doc. 281). The Court sentenced Reginald Brown to imprisonment for eighteen months on Count One to Count Twelve, and Count Fourteen to Count Thirty-Three, and twelve months on Count Thirty-Eight, all to run concurrently, followed by concurrent terms of supervised release of three years on Count One to Count Twelve, and Count Fourteen to Count Thirty-Three, and one year on Count Thirty-Eight. (Crim. Doc. 98).

Reginald Brown appealed to the Eleventh Circuit, raising the following arguments:

> Reginald Brown challenges two of the district court's procedural actions at trial and two of its determinations related to his sentencing. With respect to Brown's procedural challenges, he argues that the district court erred in (1) denying his motions to sever his trial from his co-defendant, Katrina Brown, and (2) denying his motion for a judgment of acquittal. Reginald Brown also argues that, at sentencing, the district court erred in (1) applying the sophisticated means enhancement and (2) denying his request for the minor role reduction.

United States v. Brown, No. 20-14254, 2021 WL 5407455, at *1 (11th Cir. Nov. 19, 2021). The court of appeals rejected these arguments, affirming Reginald Brown's convictions and sentences. Id. Reginald Brown then petitioned the United States Supreme Court for a writ of certiorari. The Supreme Court denied certiorari review on October 3, 2022. (Crim. Doc. 554). Reginald Brown timely filed his § 2255 motion on September 27, 2023. (Civ. Doc. 1).

## III. Governing Law

Under Title 28, United States Code, § 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits collateral relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a). Only jurisdictional claims, constitutional claims,

and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184–86 (1979); Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) ("[A] district court lacks the authority to review the alleged error unless the claimed error constitute[s] a fundamental defect which inherently results in a complete miscarriage of justice." (internal quotation marks omitted)). The Supreme Court recognizes that a petitioner's claim that he was denied the effective assistance of counsel, in violation of the Sixth Amendment, is properly brought in a collateral proceeding under § 2255. Massaro v. United States, 538 U.S. 500, 504 (2003).

To establish ineffective assistance of counsel, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Martin v. United States, 949 F.3d 662, 667 (11th Cir. 2020). In determining whether the petitioner has satisfied the first requirement, that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994) (citing Strickland, 466 U.S. at 688). The petitioner must show, given all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Scott v. United States, 890 F.3d 1239,

1258 (11th Cir. 2018) (internal quotation marks and citation omitted). In other words, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing Strickland, 466 U.S. at 687). To satisfy the second requirement, that counsel's deficient performance prejudiced the defense, the petitioner must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Martin, 949 F.3d at 667 (citing Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. But because both prongs are necessary, "there is no reason for a court . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

A § 2255 movant "bears the burden to prove the claims in his § 2255 motion." Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015); see also Beeman v. United States, 871 F.3d 1215, 1221–22 (11th Cir. 2017). Moreover, a § 2255 movant is not entitled to a hearing, much less relief, "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (internal quotations and citation omitted).

## IV. Discussion

Brown asserts sixteen grounds of ineffective assistance of trial counsel and one ground of ineffective assistance of appellate counsel. (Civ. Doc. 1 at 5–37).

### A. Ground One

As Ground One, Reginald Brown argues that trial counsel deficiently performed by not timely filing motions. (Civ. Doc. 1 at 4). He contends that trial counsel failed to object to the admission of bank records and other evidence. (Civ. Doc. 1 at 4). He says that, at a September 6, 2019, hearing, Katrina Brown objected to the admission of bank records and other evidence and that trial counsel failed to adopt Katrina Brown's objections. (Civ. Doc. 1 at 4). He further contends that trial counsel deficiently performed by introducing into evidence documents that were not relevant to the charges in the Indictment. (Civ. Doc. 1 at 4).

Before trial, Katrina Brown moved to exclude summary charts related to deposits, checks, transactions, deliveries of checks, and draw requests. (Crim. Doc. 201 at 1). At the September 6, 2019, hearing, the prosecutor advised that he intended to introduce into evidence the bank and business records on which the summary charts were based and to present testimony by witnesses to authenticate the records. (Crim. Doc. 312 at 5–8, 16–17). For that reason, the Court denied Katrina Brown's motion to exclude the summary

charts without prejudice to Katrina Brown's renewal of the objection at trial if the prosecutor failed to lay an adequate predicate for the admission of the summary charts. (Crim. Doc. 312 at 18–20). At trial, the Court admitted into evidence thirty-six summary charts[6] because an adequate predicate supported their admission. (Crim. Docs. 334 at 117, 335 at 282, 336 at 51, 53, 58–59, 63–64, 67, 71–80, 83–84, 89–92, 99–100, 104–07, and 340 at 52–53, 68, 71–72). Consequently, because trial counsel would not have obtained any relief by adopting Katrina Brown's motion to exclude, Reginald Brown fails to demonstrate prejudice under Strickland. Brewster, 913 F.3d at 1056 ("Defense counsel, of course, need not make meritless motions or lodge futile objections.").

Also, at the September 6, 2019, hearing, after the Court ruled on Katrina Brown's pro se motion, trial counsel further objected to the admission of the summary charts. (Crim. Doc. 312 at 20–26). Notably, trial counsel argued that the summaries mischaracterized the evidence and were misleading, confusing, and cumulative to other evidence. (Crim. Doc. 312 at 21–26). Additionally, trial counsel renewed the objections during trial. (Crim. Docs. 336 at 57–59, 67, 70–77, 89–90). Because the record demonstrates that trial counsel did object, the claim is meritless.

---

[6] (Crim. Docs. 276-46, 276-54, 276-55, 276-113, 276-127, 276-129, 276-141, 276-142, 276-143, 276-144, 276-145, 276-146, 276-147, 276-148, 276-149, 276-150, 276-151, 276-152, 276-153, 276-154, 276-155, 276-156, 276-157, 276-158, and 276-159).

Lastly, Reginald Brown fails to identify any other bank record or document that trial counsel should have moved to exclude and fails to identify a legal ground that supported a motion to exclude. Likewise, Reginald Brown fails to identify any document introduced into evidence by trial counsel that lacked relevance. "[T]he Section 2255 Rules mandate 'fact pleading' as opposed to 'notice pleading,' as authorized under Federal Rule of Civil Procedure 8(a)." Borden v. Allen, 646 F.3d 785, 810 (11th Cir. 2011). Because the allegations supporting these additional claims fail to meet this "heightened pleading requirement," the additional claims are facially deficient. Borden, 646 F.3d at 810 (citing McFarland v. Scott, 512 U.S. 849, 856 (1994)). Consequently, the claims in Ground One are due to be **DENIED**.

**B. Ground Two**

As Ground Two, Reginald Brown asserts that trial counsel deficiently performed during opening statements by using terms such as "shell companies," "tearful confessions," and "false invoices." (Civ. Doc. 1 at 5). He also argues that trial counsel deficiently performed by admitting that Katrina Brown submitted false invoices to vendors and saying that Reginald Brown should have "been more suspicious." (Civ. Doc. 1 at 5). According to Reginald Brown, trial counsel conceded his guilt without his permission. (Civ. Doc. 1 at 5).

During opening statements, trial counsel told the jury that "[v]irtually all the evidence [ ] in this case will concern whether Katrina Brown fraudulently induced the lender, BizCapital, to disburse funds from a loan agreement her family's business made with the bank, [and] whether those false representations that she made were material to the bank's decision to issue the check for the money." (Crim. Doc. 286 at 25). Trial counsel asserted that the evidence would not prove that Reginald Brown committed any crime charged in the Indictment. (Crim. Doc. 286 at 25–26). Trial counsel maintained that Reginald Brown relied on Katina Brown's knowledge of business development when assisting her with the new barbecue sauce business. (Crim. Doc. 286 at 28–30). And he argued that, at Katrina Brown's direction, Reginald Brown opened a bank account for the new business, inspected shelves at stores where the barbecue sauce was sold, and promoted the barbecue sauce by organizing and planning a barbecue festival. (Crim. Doc. 286 at 30–32). According to trial counsel, Reginald Brown started to ask Katrina Brown questions in late 2016 and early 2017, only after learning about the criminal investigation. (Crim. Doc. 286 at 33).

Trial counsel asserted that the evidence would demonstrate that Reginald Brown did not know that Katrina Brown submitted false invoices and that Katrina Brown exploited Reginald Brown by having him form the new companies:

> [Trial counsel:] The evidence will be, ladies and gentlemen, that if the money pipeline from the loan starts to dry up for Katrina Brown in the fall of 2013, Katrina Brown, without Mr. Brown's knowledge or consent, resorts to other tactics to keep it flowing.
>
> And those tactics, it appears, consisted of using Mr. Brown to set up two companies, A Plus Training and RB Packaging, to be used as [ ] a conduit, a shell company, a holding company—however you like to characterize it—to transfer what she apparently truly believes was her money, the proceeds of this loan, to her Basic Products account.
>
> The evidence will be, ladies and gentlemen, that Reginald Brown was not the first or only person Ms. Brown may have used to obtain disbursements from the bank under—from the lender under false pretenses.

(Crim. Doc. 286 at 34).

Trial counsel further maintained that after learning about the criminal investigation, Reginald Brown confronted Katrina Brown and that Katrina Brown admitted to preparing the false invoices:

> [Trial counsel:] It is after he learns that he might be implicated in this allegation that he confronts Ms. Brown directly about those allegations.

> It is at this meeting he asked her, he tells: "The FBI is investigating me. What's going on?"
>
> It's at this meeting Katrina Brown admits tearfully that she did it. She prepared the false invoices. She e-mailed the lender. She oftentimes picked up the deliveries from his home. Reginald Brown had no knowledge of the—that she submitted false invoices to the lender.

(Crim. Doc. 286 at 37–38).

Trial counsel asserted that the evidence would demonstrate that Reginald Brown did not knowingly and willfully commit the crimes charged in the Indictment and asked the jury to find Reginald Brown not guilty. (Crim. Doc. 286 at 39–40).

The transcript refutes Reginald Brown's contention that trial counsel conceded his guilt. Trial counsel instead argued that the evidence would demonstrate that Reginald Brown was not guilty. In doing so, trial counsel used terms like "shell companies" and "false invoices" to shift blame away from Reginald Brown and onto Katrina Brown. Moreover, Reginald Brown knew that trial counsel intended to blame Katrina Brown at trial because before trial, trial counsel moved for a severance to pursue this strategy. (Crim. Docs. 59 at 5 and 224 at 4–5). Because Reginald Brown fails to demonstrate that no reasonable counsel would have pursued this strategy at trial, his ineffective

assistance of counsel claim is meritless. Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."). Consequently, the claim in Ground Two is due to be **DENIED**.

**C. Ground Three**

As Ground Three, Reginald Brown asserts that trial counsel deficiently performed by failing to reasonably investigate exculpatory evidence and by failing to cross-examine Valentino Rovere, a witness who testified at trial. (Civ. Doc. 1 at 7). Reginald Brown fails to identify any specific exculpatory evidence that trial counsel failed to investigate, fails to explain what trial counsel would have discovered if he had investigated, and fails to identify any questions that trial counsel should have asked Rovere. At trial, Rovere testified on behalf of Katrina Brown, and both the prosecutor and trial counsel cross-examined Rovere. (Crim. Doc. 337 at 60–72, 78–83). Because the allegations supporting this claim fail to meet the heightened pleading standards for a § 2255 motion and because the record demonstrates that trial counsel did cross-examine Rovere, the claim is meritless. Borden, 646 F.3d at 810. Perkins v. United States, 73 F.4th 866, 880 (11th Cir. 2023) ("'Speculation is

insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation.'") (quoting Brownlee v. Haley, 306 F.3d 1043, 1060 (11th Cir. 2002)). Consequently, the claim in Ground Three is due to be **DENIED**.

**D. Ground Four**

As Ground Four, Reginald Brown asserts that trial counsel deficiently performed by not objecting to the admission of bank statements for accounts belonging to Cowealth and Basic Products. (Doc. 1 at 8). He contends that the Indictment alleged that the crimes occurred between 2012 and 2015, and argues that the bank statements contained transactions that occurred "outside of the indictment period." Id.

Almost all the conduct alleged in the Indictment occurred between 2012 and 2015. (Crim. Doc. 1 at 11–12, 40, 48–49, 55, 57). However, the Indictment further alleged that, between October 2015, and November 8, 2016, Katrina Brown attempted to commit bank fraud and that on November 8, 2016, Katrina Brown made a false statement to a federally insured institution. (Crim. Doc. 1 at 50–57). Indeed, the Indictment specifically alleged that Katrina Brown "obtained altered Wells Fargo bank statements for Basic Products for the months of July, August, and September 2016," and that "actual Wells Fargo bank statements for KJB Specialties for the months of March, April, and May 2016, were used as a template to create the false and fraudulent Basic Products

bank statements for July, August, and September 2016." (Crim. Doc. 1 at 53). Consequently, the record refutes Reginald Brown's contention that the Indictment alleged that the crimes occurred only between 2012 and 2015.

Also, the prosecutor introduced into evidence bank statements for three accounts that belonged to Cowealth. (Crim. Doc. 276-18). Notably, the bank statements for one account were for transactions that occurred from February 28, 2012, until January 31, 2016. (Crim. Doc. 276-18 at 5–72). The January 2016, bank statement for that account contained no transactions. (Crim. Doc. 276-18 at 72). The bank statements for the second account were for transactions that occurred from November 22, 2011, until January 31, 2016. (Crim. Doc. 276-18 at 76–126). Similarly, the November 2011[7], December 2011, and January 2016, bank statements contained no transactions. (Crim. Doc. 276-18 at 76, 77, 126). The bank statement for the third account was for transactions that occurred between December 9, 2014, and December 31, 2014. (Crim. Doc. 276-91). Because Brown fails to demonstrate a reasonable probability that the outcome at trial would have changed if trial counsel had objected to the admission of the November 2011, December 2011, and January 2016, bank statements that contained no transactions, his claim based on those bank statements is meritless. Strickland, 466 U.S. at 694.

[7] The November 2011, statement reflects only a deposit of $2,609,612.20 for the SBA loan. (Crim. Docs. 276-7 and 276-18 at 76).

Likewise, the prosecutor introduced into evidence bank statements for two accounts that belonged to Basic Products. The bank statements for the first account were for transactions that occurred between November 1, 2013, and December 31, 2014. (Crim. Doc. 276-25 at 6–15, 276-31 at 13–21, 276-72 at 11–15, 276-73 at 12–14, 276-74 at 7–9, 276-75 at 8–11, 276-76 at 8–14, 276-82 at 12–16, 276-85 at 5–9, 276-86 at 3–8, 276-87 at 3–7, 276-88 at 4–8, 276-89 at 3–6, 276-96 at 3–6). And Wells Fargo bank statements for the second account were for transactions that occurred between July 12, 2016, and October 7, 2016. (Crim. Doc. 276-106). Because the 2016 Wells Fargo bank statements were relevant to the crimes charged against Katrina Brown for attempted bank fraud and making a false statement to a federally insured institution, an objection to the admission of those bank statements would not have succeeded. Consequently, trial counsel did not deficiently perform. Brewster, 913 F.3d at 1056. The claim in Ground Four is due to be **DENIED**.

**E. Ground Five**

As to Ground Five, Reginald Brown asserts that trial counsel deficiently performed at sentencing by not presenting testimony of an expert addressing the amount of loss. (Civ. Doc. 1 at 13). He further asserts that trial counsel conceded that the amount of loss started at $265,000.00, and failed to ask Timothy Myers, an accountant retained by trial counsel, to evaluate an

estimate of expenses calculated by Agent Castiglia and to calculate an amount of loss. (Civ. Doc. 1 at 13).

In the presentence investigation report, the probation officer attributed an amount of loss of $422,686.68 to Reginald Brown. (Crim. Doc. 419 at 18). In a sentencing memorandum, trial counsel adopted an objection in Katrina Brown's sentencing memorandum to the amount of loss. (Crim. Doc. 400 at 1). In her sentencing memorandum, Katrina Brown referred to a memorandum jointly filed by both Defendants that "address[ed] virtually all of the financial issues [and] disputes." (Crim. Doc. 399 at 2). In the joint memorandum, Reginald Brown and Katrina Brown argued that the Small Business Administration, BizCapital, and the City of Jacksonville suffered no loss. (Crim. Doc. 355 at 2–28). Also, at sentencing, Josh Shilts, a certified public accountant, testified on behalf of both Reginald Brown and Katrina Brown. (Crim. Doc. 492 at 76). Shilts reviewed relevant documents in the case, created schedules based on his review of those documents, and explained the schedules. (Crim. Doc. 492 at 76–133). At sentencing, trial counsel relied on the testimony by Shilts, the exhibits introduced into evidence by Katrina Brown's counsel, and the jointly filed memorandum to object to the amount of

loss. (Crim. Doc. 492 at 8, 14–15, 142).[8] Because the record demonstrates that trial counsel did object to the amount of loss, did present testimony and other evidence at sentencing to support the objection, and did not concede that the amount of loss started at $265,000.00, Reginald Brown's claim is meritless.

Reginald Brown further asserts that trial counsel deficiently performed by not asking the expert to evaluate an estimate of expenses by Agent Castiglia. (Civ. Doc. 1 at 13). He contends that the agent estimated the amount of money that he spent for promotional events for the sauce and the amount of money that he should have received for his work for the business. (Civ. Doc. 1 at 13). Brown fails to submit an affidavit or report by the expert and instead speculates that testimony by the expert would have exculpated him. Perkins, 73 F.4th at 880. Despite this, at sentencing, the Court rejected the Defendants' argument that legitimate business expenses offset the amount of loss. (Crim. Doc. 493 at 45–46). See U.S.S.G. §2B1.1, application note (3)(D)(i) ("Loss shall be reduced by the following: The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected."). Consequently, Reginald Brown fails to demonstrate a

[8] Also, trial counsel successfully objected to combining the amount of loss for the fraud convictions with the amount of loss for the conviction for failing to file a tax return. (Crim. Docs. 419 at 16 and 492 at 201).

reasonable probability that the outcome at sentencing would have changed if trial counsel had presented additional testimony by an expert. Strickland, 466 U.S. at 694. As such, the claim in Ground Five is due to be **DENIED**.

**F. Grounds Six and Sixteen**

As Ground Six, Reginald Brown asserts that trial counsel deficiently performed by not preserving for appellate review an objection to the calculation of forfeiture. (Civ. Doc. 1 at 15). And as Ground Sixteen, he asserts that appellate counsel deficiently performed by not arguing on appeal that the calculation of forfeiture was erroneous. (Civ. Doc. 1 at 35). Because a claim based on the calculation of forfeiture is not cognizable in a § 2255 motion, the claims are meritless. Saldana v. United States, 273 F. App'x 842, 844 (11th Cir. 2008). United States v. Harris, 546 F. App'x 898, 901 (11th Cir. 2013) ("28 U.S.C. § 2255 does not offer relief from the non-custodial features of a criminal sentence."). The claims in Grounds Six and Sixteen are due to be **DENIED**.

**G. Ground Seven**

As Ground Seven, Reginald Brown again asserts that trial counsel deficiently performed during sentencing by failing to object to the amount of loss, by agreeing that the amount of loss was at least $265,000.00, and by failing to consult with the accountant. (Civ. Doc. 1 at 17). He further asserts that trial counsel deficiently performed by failing to object to the prosecutor's

Exhibit 1A to Exhibit 1I, by failing to cross-examine a witness about the June 12, 2015 letter and by failing to object to the amount of loss incurred by the City of Jacksonville and BizCapital. (Civ. Doc. 1 at 17).

As previously noted, the record refutes the contention that trial counsel failed to either object to the amount of loss or agreed that the amount of loss was at least $265,000.00. Also, although Brown speculates that he suffered prejudice from trial counsel's alleged failure to consult with the accountant, he fails to present any supporting evidence. Moreover, the documents in the prosecutor's Exhibit 1A to Exhibit 1I demonstrate that in 2011, Cowealth and Basic Products signed the SBA loan agreement, and the City of Jacksonville passed the ordinance for the second loan and the grant. (Crim. Docs. 276-1, 276-2, 276-3, 276-4, 276-5, 276-6, 276-7, 276-8). While the criminal conduct alleged in the Indictment occurred between 2012 and 2016 (Crim. Doc. 1 at 11–57), the Indictment also alleged that in 2011, Cowealth and Basic Products obtained the SBA loan from BizCapital, and the City of Jacksonville passed the ordinance. (Crim. Doc. 1 at 3–4). The Indictment further alleged that Reginald Brown and Katrina Brown fraudulently obtained money from the SBA loan and the City's grant by submitting false invoices. (Crim. Doc. 1 at 12–39). Because Exhibit 1A to Exhibit 1I demonstrated the source of the money fraudulently obtained by the Defendants, the exhibits were relevant to the crimes charged in the Indictment. United States v. Duff, 707 F.2d 1315, 1318

(11th Cir. 1983) ("'Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'") (quoting Fed. R. Evid. 401). An objection to the exhibits would not have succeeded, thus trial counsel did not deficiently perform. Brewster, 913 F.3d at 1056.

In the June 12, 2015 letter, Jane Bouda, a contract compliance manager at the City of Jacksonville, advised BizCapital as follows:

> The City of Jacksonville gave Cowealth [and] Basic Products a grant in the amount of $210,549.99, in December of 2014. These funds were reimbursement for eligible project costs associated with the renovation of the facility located at 5638 Commonwealth Avenue, Jacksonville, Florida. These monies can be disbursed to Cowealth [and] Basic Products.
>
> (Civ. Doc. 19-1 at 3).

The facility referenced in the letter is the warehouse where the barbecue sauce was produced. (Crim. Docs. 276-8 at 6 and 339 at 207–08). Certainly, the letter did not authorize the use of the money from the City's grant without any restriction. Notably, the redevelopment agreement between the City of Jacksonville and KJB Specialties authorized Cowealth and Basic Products to use the money from the City's grant only for improvements described in Exhibit B attached to the agreement. (Crim. Doc. 276-8 at 11). Exhibit B contained a chart with a list of expenses for building the barbecue sauce

facility. (Crim. Doc. 276-8 at 43). Specifically, the chart prohibited the use of the City's loan and grant for "working capital and inventory." (Crim. Doc. 276-8 at 43). Consequently, Reginald Brown cannot demonstrate prejudice from trial counsel's failure to cross-examine Bouda with the letter. White v. Singletary, 972 F.2d 1218, 1223 (11th Cir. 1992).

Reginald Brown asserts that trial counsel deficiently performed by not objecting to the addition of $210,549.99 from the City of Jacksonville to the amount of loss, by failing to cross-examine an employee from BizCapital about additional funding of $129,991.46 received on August 25, 2015, and by not objecting to evidence related to Draw Requests 79, 80, 81, and 82. (Civ. Doc. 1 at 17). As previously noted, trial counsel did object to the amount of loss incurred by the City of Jacksonville. Also, Reginald Brown does not identify the source of the additional funding. Likewise, Reginald Brown fails to identify any evidence admitted at trial related to Draw Requests 79, 80, 81, and 82. (Crim. Doc. 276 at 4–7, 10–16, 31–32). Consequently, the record refutes the claims. The claims in Ground Seven are due to be **DENIED**.

**H. Grounds Eight and Eleven**

As Grounds Eight and Eleven, Reginald Brown asserts that trial counsel deficiently performed by failing to object to evidence that contained "false numbers" presented by the prosecutor and to evidence concerning a loss incurred by the SBA. (Civ. Doc. 1 at 19, 25). He contends that the SBA was not

a victim because the SBA initially paid money to BizCapital and BizCapital used that money to fund a bridge loan. (Civ. Doc. 1 at 19). He also contends that payments for the twelve invoices charged as fraud in the Indictment derived from the bridge loan funded by BizCapital. (Civ. Doc. 1 at 19). According to Reginald Brown, any funding by the SBA occurred outside the scope of the charges in the Indictment. (Crim. Doc. 1 at 19).

Reginald Brown does not identify any "false numbers" presented by the prosecutor. Notably, in the joint loss memorandum, Reginald Brown and Katrina Brown argued that because the Small Business Administration "did not provide any of the funds disbursed by BizCapital, there [was] no loss as to the [Small Business Administration], as confirmed by the [presentence investigation report], which does not list [the Small Business Administration] as a 'victim' in the 'Victim Impact' portion of the [report]." (Crim. Doc. 355 at 2). Indeed, in the "Victim Impact" section of the presentence investigation report, the probation officer did not identify the Small Business Administration as a victim. (Crim. Doc. 419 at 16–17). At sentencing, the Court calculated an amount of loss attributable to Reginald Brown of $422,686.66, which comprised of $201,202.69 as a loss for BizCapital and $210,549.99 as a loss for the City of Jacksonville. (Crim. Doc. 493 at 22, 58–59, 61). Moreover, the Court refused to assess the full amount of the SBA loan when calculating the amount of loss:

[Court:] In paragraph 49, the Defendants object to the request by BizCapital for the full amount of the loan proceeds, and BizCapital has submitted a request for restitution, claiming to have a total loss of 1.89 — $1,189,320.91, which it explains is the amount lost on the loan.

And if this had been a fraudulent loan from the start, then perhaps that would have been the amount that would have been appropriately calculated as the loss and awarded, at least as a starting point, of restitution to BizCapital, although it would have been reduced by the sale of the building. But that's not what the charged conduct was and that restitution request by BizCapital is not supported by the evidence.

The full amount of the default on the loan was not caused by the fraud. And restitution is not intended to be a windfall for the victim. BizCapital made what turns out to have been a bad loan, and the consequence of that will not be visited on Mr. Brown and Ms. Brown entirely. Instead, they are responsible for their conduct that resulted in wrongful distributions, but not for the failed loan.

(Crim. Doc. 493 at 59–60).

Because the Court did not treat the Small Business Administration as a victim and did not add to the amount of loss the money that the Small Business

Administration paid for the guarantee, Reginald Brown cannot demonstrate prejudice under Strickland. Strickland, 466 U.S. at 694.

Importantly, while the Court did not find the Small Business Administration to be a victim, evidence of the SBA loan was still relevant at trial. In fact, the SBA loan agreement required Basic Products and Cowealth to submit a draw request to use money from the SBA loan because of restrictions on the use of the money. (Crim. Doc. 276-2 at 4). In an SBA settlement sheet signed by Katrina Brown and her mother, Basic Products and Cowealth agreed to comply with the restrictions on the use of the money. (Crim. Doc. 276-6). Consequently, Katrina Brown committed fraud when she submitted draw requests with fabricated invoices and used money from the SBA loan for unauthorized purposes, including personal expenses. Because an objection to evidence related to the SBA loan would not have succeeded, trial counsel did not deficiently perform.[9] Brewster, 913 F.3d at 1056; Duff, 707 F.2d at 1318. The claims in Grounds Eight and Eleven are due to be **DENIED**.

---

[9] Also, at trial, trial counsel attempted to ask an SBA employee and a BizCapital employee questions about an administrative proceeding in which the Small Business Administration demanded from BizCapital $782,000.00 for the guarantee. (Crim. Doc. 339 at 8–12, 91–94). For tax purposes, BizCapital initially funded the SBA loan with a bridge loan and intended to substitute the bridge loan with the SBA loan. (Crim. Doc. 339 at 6). The SBA accused BizCapital of mismanagement of the SBA loan by failing to close the bridge loan. (Crim. Doc. 339 at 6–7). The Court refused to permit trial counsel to cross-examine the witnesses about the administrative proceeding because BizCapital's negligence or disregard of its own policies did not excuse the charged fraudulent conduct. (Crim. Doc. 339 at 94–100). Consequently, trial counsel did not deficiently perform.

**I. Ground Nine**

As Ground Nine, Reginald Brown asserts that trial counsel deficiently performed by failing to investigate and present exculpatory evidence at sentencing. (Civ. Doc. 1 at 21). He asserts that before sentencing, Katrina Brown's counsel gave trial counsel exculpatory evidence, and trial counsel refused to investigate the exculpatory evidence. (Civ. Doc. 1 at 21). Because Reginald Brown fails to identify any exculpatory evidence that trial counsel failed to investigate, the allegations supporting this claim fail to meet the heightened pleading standards for a § 2255 motion. Borden, 646 F.3d at 810. Also, because Reginald Brown fails to identify any additional evidence that trial counsel would have discovered if he investigated the exculpatory evidence, his claim is based on speculation. Perkins, 73 F.4th at 880. Consequently, the claim in Ground Nine is due to be **DENIED**.

**J. Ground Ten**

As Ground Ten, Reginald Brown asserts that trial counsel deficiently performed at trial by failing to introduce into evidence receipts and contracts to demonstrate that Reginald Brown legitimately spent money and worked during the relevant period. (Civ. Doc. 1 at 23). He contends that the receipts and contracts would have demonstrated that the invoices were not false. (Civ. Doc. 1 at 23). He further contends that Katrina Brown's counsel delivered the

receipts and contracts to the prosecutor and that the prosecutor failed to present the receipts and contracts to the grand jury. (Civ. Doc. 1 at 23).

As an initial matter, because Reginald Brown does not identify any receipt or contract that trial counsel failed to introduce into evidence, the allegations supporting this claim fail to meet the heightened pleading standards for a § 2255 motion and are also based on speculation. Borden, 646 F.3d at 810. Perkins, 73 F.4th at 880. Moreover, during trial, trial counsel introduced into evidence photographs and a slideshow to demonstrate that Reginald Brown organized and attended a festival. (Crim. Doc. 278-6). And on cross-examination, trial counsel elicited testimony that showed that Reginald Brown incurred legitimate expenses for several festivals. (Crim. Docs. 336 at 159–61 and 340 at 101–03). Additionally, during closing, trial counsel argued that the evidence proved that Reginald Brown spent significant time organizing the festivals and that a criminal conspiracy between Reginald Brown and Katrina Brown did not exist. (Crim. Doc. 515 at 93–94, 97, 99). As previously noted, at sentencing, the Court rejected the Defendants' argument that legitimate business expenses offset the amount of loss. (Crim. Doc. 493 at 45–46). Lastly, the jury's guilty verdict at trial renders any error during the grand jury proceedings harmless. United States v. Flanders, 752 F.3d 1317, 1333 (11th Cir. 2014) (citing United States v. Mechanik, 475 U.S. 66, 67 (1986)). Consequently, trial counsel did not deficiently perform, and Reginald

Brown fails to demonstrate prejudice under Strickland. The claim in Ground Ten is due to be **DENIED**.

**K. Ground Twelve**

As Ground Twelve, Reginald Brown asserts that trial counsel deficiently performed by failing to call Katrina Brown as a witness at trial. (Civ. Doc. 1 at 27). Before trial, trial counsel filed a motion to sever Reginald Brown's trial from Katrina Brown's trial because Katrina Brown intended to testify at his trial. (Crim. Doc. 59). Reginald Brown supported the motion with an affidavit from Katrina Brown stating that she intended to testify and exculpate Reginald Brown at his trial. (Crim. Doc. 68). However, the Court denied the motion because the affidavit contained only conclusory statements and did not clearly demonstrate Reginald Brown's need for Katrina Brown's testimony. (Crim. Doc. 114 at 11–13). Subsequently, Katrina Brown filed a pro se motion to sever her trial from Reginald Brown's trial because she intended to testify at Reginald Brown's trial. (Crim. Doc. 215). In doing so, Katrina Brown supported her motion with a second affidavit that contained more detailed statements about her proposed testimony. (Crim. Doc. 215 at 4–9). Also, trial counsel filed a second motion to sever based on Katrina Brown's intent to testify and supported the second motion with Katrina Brown's second affidavit. (Crim. Doc. 224). Despite this, the Court denied both motions to sever because the motions were untimely and because Katrina Brown's proposed testimony

did not clearly exculpate Reginald Brown. (Crim. Doc. 237). Also, at the joint trial, Katrina Brown declined to testify. (Crim. Doc. 337 at 139). Reginald Brown speculates that Katrina Brown would have waived her Fifth Amendment right against self-incrimination if trial counsel had subpoenaed her to testify at trial. Because trial counsel attempted to secure Katrina Brown's testimony at a severed trial and because Reginald Brown fails to demonstrate that Katrina Brown would have waived her privilege against self-incrimination and testified at the joint trial, he fails to demonstrate prejudice under Strickland. Ivory v. United States, 153 F.4th 1358, 1367 (11th Cir. 2025) (holding that an ineffective assistance of counsel claim based on trial counsel's failure to call a witness to testify was meritless because "there [was] little in the record showing that [the witness] was willing to testify and waive his Fifth Amendment privilege against self-incrimination." (internal quotations omitted)).

Also, Reginald Brown asserts that trial counsel deficiently performed by not calling Ann Smiley to testify. (Civ. Doc. 1 at 27). Trial counsel listed Smiley on a witness list (Crim. Doc. 247) and identified Smiley on an exhibit list as a person who would authenticate the affidavit by Katrina Brown. (Crim. Doc. 268 at 2). When the Court advised that only some statements in the second affidavit were admissible as statements against interest (Crim. Doc. 337 at 152–61), trial counsel responded that "[Reginald Brown's] position [was] he

wants it all in, and absent that, he doesn't want any of it in." (Crim. Doc. 337 at 142–43). Therefore, trial counsel did not call Smiley to authenticate the affidavit. Because Reginald Brown fails to demonstrate that no reasonable attorney would have declined to call Smiley under these circumstances, Reginald Brown's claim is meritless. Chandler, 218 F.3d at 1315. Consequently, the claim in Ground Twelve is due to be **DENIED**.

**L. Ground Thirteen**

As Ground Thirteen, Reginald Brown asserts that trial counsel deficiently performed by not objecting to testimony by an IRS agent that Reginald Brown failed to provide receipts and other documents substantiating the expenses for the barbecue festival. (Civ. Doc. 1 at 29). At trial, on cross-examination, the IRS agent testified that RB Packaging failed to produce records related to the business:

> [Trial counsel:] All right. And essentially, you know, there may be some expenses related to—entertainment expenses related to the business, promotional type of activities, that might be—if there were kind of proper business expenses circumstances, might be expensed out of the income portion of this.
>
> [Agent:] Are we speaking hypothetically or specifically about Mr. Brown?
>
> [Trial counsel:] We're speaking hypothetically.

[Agent:] Hypothetically, yes, a business sometimes can do that.

[Trial counsel:] But that would require, I guess, a basic understanding of what the rules of reporting the income and expensing business expenses would be, correct?

[Agent:] Can you repeat that?

[Trial counsel:] I said that would require some basic understanding of the business income and business expensing process in order to kind of properly account for all this activity.

[Agent:] Or to hire someone who knew that.

[Trial counsel:] All right. All right. Let's turn to, if I could—Well, and I guess that answers the question. In your review of all the books, there was really no indication that—that there was any accounting or any kind of professional services provided to do the books in this case.

[Agent:] RB Packaging failed to produce any records to us relating to the business.

(Crim. Doc. 340 at 99–100).

However, during a break, trial counsel moved for a mistrial because of the agent's testimony:

[Trial counsel:] Judge, I have a preliminary matter I'd like to—two, actually, I'd like to address before we get to the

[judgment of acquittal]. Over the lunch hour—actually at the conclusion of Special Agent Castiglia's testimony, one of the last answers he provided, in response to a question about searching for funds related to—identifying cash that might have been spent on the Memorial Day festival is—the response that he appeared to have made was that RB Packaging failed to produce any records.

Now, I've got to be a hundred percent honest with you. I'm not sure I heard it at the time, but when I sat down, Mr. Brown was quite upset about it for really reasons other than what I'm about to address.

But having contemplated this over lunch, and I checked with the court reporter, and it appears to be right—one of his very last answers. It appears to be that's what he said.

And my concern about it, of course, is that it amounts to burden-shifting, that the defendant has some obligation to produce records or to produce any evidence whatsoever.

I don't know the intent of the answer. I was expecting a no, and quite frankly, wasn't sure at the time that—in fact, Mr. Brown and I had a bit of a dispute about whether the remark was made at all, but he certainly heard it, and it

> appears to be supported by the record.
>
> So my concern in my motion is it's the burden—that the motion should be—the answer should be at a minimum stricken, and the jury instructed to disregard it. I would move for a mistrial because it has essentially amounted to a burden-shifting argument, and that is the—that is my first motion.

(Crim. Doc. 340 at 121–22).

The Court denied the motion for a mistrial because the agent testified about RB Packaging's failure to produce records and did not testify that Reginald Brown failed to produce records and because the comment was fleeting. (Crim. Doc. 340 at 210, 215–17). Instead, the Court offered a curative instruction, and trial counsel accepted the instruction. (Crim. Docs. 340 at 217 and 337 at 6). The Court instructed the jury to disregard the testimony about RB Packaging's failure to produce any records:

> [Court:] Before we begin with the evidence this morning, I want to address one thing with you. On Friday morning, you heard Agent Castiglia testify that RB Packaging did not produce records relating to its business. I want to remind you that the defendant Reginald Brown has no obligation to produce any evidence in this case.

(Crim. Doc. 337 at 22).

Because trial counsel objected to the agent's testimony and moved for a mistrial and because a court presumes that the jury follows a curative instruction, trial counsel did not deficiently perform, and Reginald Brown fails to demonstrate prejudice under Strickland. United States v. Crespo, 178 F.4th 1250, 1269 (11th Cir. 2026).

Also, Reginald Brown asserts that trial counsel deficiently performed by not objecting to evidence that demonstrated that Reginald Brown knew about the SBA loan and the ordinance by the City of Jacksonville that funded both the second loan and the grant. (Civ. Doc. 1 at 29). He argues that the prosecutor unfairly inferred from this evidence that he knew that the City of Jacksonville would provide the grant and the loan after Katrina Brown exhausted the funds from the SBA loan. (Civ. Doc. 1 at 29). Yet, before trial, trial counsel moved to exclude evidence that Reginald Brown voted in favor of the ordinance (Crim. Doc. 123), and the Court granted the motion and prohibited the admission of evidence of how Reginald Brown voted on the ordinance. (Crim. Doc. 151).

At trial, the prosecutor introduced into evidence a copy of the ordinance and the minutes of the meeting when the city council approved the ordinance. (Crim. Doc. 276-1). The minutes showed that Reginald Brown was a city councilmember who voted on the ordinance. (Crim. Doc. 276-1 at 5–6). However, the prosecutor redacted from the minutes how each councilperson

voted on the ordinance. (Crim. Doc. 276-1 at 6). During closing argument, the prosecutor did not argue that the ordinance and the meeting minutes demonstrated that Reginald Brown knew about the SBA loan. The prosecutor drew the reasonable inference from the minutes that Reginald Brown knew that some of the money fraudulently obtained from BizCapital derived from the loan and the grant provided by the City of Jacksonville. (Crim. Doc. 515 at 18). Because an expanded objection to the ordinance, the meeting minutes, and the prosecutor's comment would not have succeeded, trial counsel did not deficiently perform. Brewster, 913 F.3d at 1056; Duff, 707 F.2d at 1318. United States v. Spila, 136 F.4th 1296, 1306 (11th Cir. 2025) ("So long as 'the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence,' he may offer 'inferences fairly suggested by the evidence or by matters of common knowledge outside the evidence.'") (citation omitted). Consequently, the claim in Ground Thirteen is due to be **DENIED**.

**M. Ground Fourteen**

As Ground Fourteen, Reginald Brown asserts that trial counsel deficiently performed by failing to assert several defenses at trial. (Civ. Doc. 1 at 31). He contends that he asked trial counsel to proceed with a defense of "mistake of fact." (Civ. Doc. 1 at 31). Also, he contends that trial counsel failed to assert that he lacked any intent to commit the crimes. (Civ. Doc. 1 at 31).

He contends that exculpatory documents, including affidavits by Katrina Brown, supported both defenses. (Civ. Doc. 1 at 31).

A mistake of fact is a defense to the formation of a contract in a civil lawsuit based on state law. White v. Fort Myers Beach Fire Control Dist., 302 So. 3d 1064, 1073 (Fla. 2d DCA 2020) ("A cause of action for reformation 'must allege that, as a result of a mutual mistake or a unilateral mistake by one party coupled with the inequitable conduct of the other party, the . . . contract fails to express the agreement of the parties.'") (citation omitted). Because a mistake of fact is not a defense to a federal criminal charge for fraud or conspiracy to commit fraud, trial counsel did not deficiently perform. Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("[T]his Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."); Pinkney v. Sec'y, Dep't Corrs., 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief.").

Moreover, Reginald Brown fails to identify any exculpatory documents that supported a defense at trial, except for the affidavits by Katrina Brown. (Civ. Doc. 1 at 31). As previously noted, trial counsel attempted to introduce into evidence an affidavit by Katrina Brown, and the Court identified several statements in the affidavit that were inadmissible. (Crim. Doc. 337 at 152–61).

Because Reginald Brown did not want the affidavit admitted into evidence unless all the statements in the affidavit were admitted, trial counsel did not attempt to seek any further relief. Consequently, to the extent that Reginald Brown's claim is based on the affidavits by Katrina Brown, trial counsel did not deficiently perform. And to the extent that the claim is based on other documents that Reginald Brown fails to identify, the allegations supporting this claim fail to meet the heightened pleading standards for a § 2255 motion. Borden, 646 F.3d at 810.

Lastly, during closing, trial counsel argued that the documents in the case demonstrated that Katrina Brown used Reginald Brown's name to create false invoices from the companies to obtain funds from the loan. (Crim. Doc. 515 at 81–83, 90–91, 107–09). Additionally, he argued that the prosecutor did not present any evidence that an unlawful agreement between Reginald Brown and Katrina Brown existed, any evidence that connected Reginald Brown to an invoice, any evidence that Reginald Brown deposited money drawn from the loan, any evidence that Reginald Brown received a statement for a bank account where money was deposited from the loan, any evidence that Reginald Brown contacted any representative with BizCapital, or any evidence that he used his position as a city councilman to contact any person about the loan. (Crim. Doc. 515 at 84–88, 94–96, 102–07). Indeed, trial counsel argued that the prosecutor failed to prove that Reginald Brown knew that the invoices were

fraudulent and argued that the legitimate expenses for the barbecue sauce business proved that Reginald Brown reasonably believed that the barbecue business was lawful and legitimate. (Crim. Doc. 515 at 88–93, 96–100). In doing so, trial counsel told the jury that "the point is the intent" and argued that the evidence demonstrated a "lack of intent" on the part of Reginald Brown. (Crim. Doc. 515 at 97). Because the record refutes Reginald Brown's contention that trial counsel failed to argue that the prosecutor failed to prove intent, the claim is meritless. Consequently, the claim in Ground Fourteen is due to be **DENIED**.

### N. Ground Fifteen

As Ground Fifteen, Reginald Brown asserts that trial counsel deficiently performed by "opening the door" to the introduction of evidence about his romantic relationship with Katrina Brown. (Civ. Doc. 1 at 33).[10] At trial, trial counsel did not introduce any evidence of the intimate relationship between Reginald Brown and Katrina Brown. But during opening statements, trial counsel described how Reginald Brown and Katrina Brown met and how their

[10] Reginald Brown contends that a statement about the romantic relationship appeared in an agent's report and that the Court prohibited the prosecutor from introducing evidence from the report. (Civ. Doc. 1 at 33). However, before trial, Katrina Brown filed a motion to exclude any statement in the report. (Crim. Doc. 191). The prosecutor responded that he did not intend to introduce into evidence any statement in the report. (Crim. Doc. 198 at 1–2). Therefore, the Court denied as moot Katrina Brown's request for an order prohibiting the prosecutor from introducing into evidence any statement in the report. (Crim. Doc. 214 at 1–2).

relationship developed. (Crim. Doc. 286 at 27–29). Trial counsel stated that Reginald Brown "[began] to see Katrina Brown [ ] more and more as 2013 unfold[ed]," and that "their relationship ultimately [became] intimate at times." (Crim. Doc. 286 at 29). Despite this, there was no other reference to the intimate relationship during the seven-day trial. Notably, during the final charge, the Court instructed the jury that "anything that the lawyers say [ ] is not evidence and is not binding on you." (Crim. Doc. 279 at 4). And a court presumes that the jury followed the instruction. United States v. Lopez, 649 F.3d 1222, 1237–38 (11th Cir. 2011). Regardless, an intimate relationship between Reginald Brown and Katrina Brown supported the defense that Katrina Brown took advantage of Reginald Brown to commit the crimes charged in this case. Because the record refutes the contention that trial counsel "opened the door" to the admission of the evidence of the intimate relationship and because Reginald Brown fails to demonstrate prejudice under Strickland, the claim is meritless. Consequently, the claim in Ground Fifteen is due to be **DENIED**.

## V. Certificate of Appealability

If Reginald Brown seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2). To make this substantial showing, Reginald Brown "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1. Reginald Brown's Motion to Supplement (Civ. Doc. 19) is **GRANTED**. The Clerk is directed to docket the letter (Civ. 19-1 at 3) attached

to the motion as a supplement to the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.

2. Reginald Brown's Motion to Amend (Civ. Doc. 19) is **DENIED**.

3. Reginald Brown's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

4. The Clerk is directed to enter judgment in favor of the United States and against Reginald Brown, and close the file.

5. If Reginald Brown appeals the denial of the motion, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 15th day of September, 2026.

Marcia Morales Howard

**MARCIA MORALES HOWARD**
Chief United States District Judge

Copies:
Reginald Brown Brown #70581-081
Counsel of record